IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BLAKE HAWLEY and                    )
MONTEGA HOLDINGS, INC.,             )
  d/b/a MONTEGA HEALTH,           )
                                    )
                Plaintiffs,     )
                                    )
     v.                            )          Case No. 20-2562-JWL
                                    )
MELICENT BOYSEN;                    )
INCENTIVE WORLDWIDE, LLC;           )
JEFF SHEAR; AL KERSHMAN; and        )
SHEAR KERSHMAN                      )
  LABORATORIES, INC.,             )
                                    )
               Defendants.      )
                                    )
_____)

## **MEMORANDUM AND ORDER**

      This matter comes before the Court on the motion to stay the case and to compel arbitration (Doc. # 17) filed by certain defendants.  For the reasons set forth below, the Court **denies** the motion.[1]

      By this action plaintiffs Motega Holdings, Inc. ("Montega") and its owner, Blake Hawley, assert various claims against Melicent Boysen and her company, Initiatives Worldwide, LLC ("IW"); and against Shear Kershman Laboratories, Inc. ("SK") and two of its owners, Jeff Shear and Al Kershman (collectively, "the SK defendants" or "movants").  Plaintiffs allege as follows: in May 2018, Montega entered into an Asset

---

[1] This case was reassigned to the undersigned judge on October 19, 2021.

Purchase Agreement ("the APA") with the SK defendants that provided for the purchase by Montega of SK's assets over time; contemporaneously, Montega and SK entered into a Joint Venture Agreement ("the JVA") under which those parties would develop and market technology as joint venturers; and Montega and Mr. Hawley subsequently engaged Ms. Boysen to help market a certain concept, but Ms. Boysen effectively stole that concept with the assistance of Mr. Shear and Mr. Kershman acting through SK.  By their complaint in this action, Montega and Mr. Hawley assert numerous claims, as follows:  against Ms. Boysen and IW, claims for breach of contract, breach of fiduciary duty, tortious interference with contract, unjust enrichment, conversion, and a violation of the Kansas Uniform Trade Secrets Act; against the SK defendants, claims for breach of the APA, breach of fiduciary duty, tortious interference with prospective business advantage, and unjust enrichment; and against all defendants, claims for civil conspiracy and a violation of the federal Lanham Act.

By the present motion, movants seek to stay the case and to compel arbitration pursuant to a mandatory arbitration clause in the JVA.  In that provision, the parties to the JVA agreed that "any dispute, controversy or claim arising out of, relating to, or in connection with" the JVA shall first be negotiated by the parties in good faith; then shall be mediated; and then, if still unresolved, "shall be submitted to binding arbitration" under particular procedures.  Movants argue that the prerequisites of negotiation and mediation have been satisfied here and that plaintiffs must therefore submit to arbitration of their claims against movants.  In opposition, plaintiffs rely on an arbitration in the APA providing that "[a]ny dispute or claim arising out of, or in connection with, [the APA] may

be settled by binding arbitration upon written acceptance to a binding arbitration hearing by both parties." Plaintiffs argue that the conflicting arbitration provisions in the APA and the JPA, each of which has a merger clause that incorporates the other agreement and that indicates that the APA and JPA form a single agreement, demonstrate a lack of an agreement between the parties to mandatory arbitration without the consent of both sides.[2]

The Federal Arbitration Act (FAA) provides that an arbitration provision in a written commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. The FAA creates a presumption in favor of arbitration, as the Supreme Court has held that the statute "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted). In enforcing this federal policy favoring arbitration, courts apply state-law principles concerning the validity, revocability, and enforceability of contracts, as long as those state-law principles are generally applicable to all contracts and not applicable only to arbitration agreements. *See Perry v. Thomas*, 482

---

[2] The Court notes that plaintiffs, in opposing the motion, have not invoked (and have thus waived) that provision in the JVA arbitration clause that states that any judicial proceedings to compel arbitration shall be exclusively in the District Court of Douglas County, Kansas. It appears that, in light of that provision, movants have also filed an independent action against plaintiffs in that state court to compel arbitration. Plaintiffs argue that the separate action is unnecessary because they will abide by this Court's decision on the arbitration question, and in light of that representation, movants agree that the state-court-action is likely unnecessary.

U.S. 483, 492 n.9 (1987).  The Supreme Court has further stressed, however, that the parties

must have agreed to arbitrate the dispute in the first place:

> The FAA directs courts to place arbitration agreements on equal footing with
> other contracts, but it does not require parties to arbitrate when they have not
> agreed to do so.  Because the FAA is at bottom a policy guaranteeing the
> enforcement of private contractual arrangements, we look first to whether the
> parties agreed to arbitrate a dispute, not to general policy goals, to determine
> the scope of the agreement.  While ambiguities in the language of the
> agreement should be resolved in favor of arbitration, we do not override the
> clear intent of the parties, or reach a result inconsistent with the plain text of
> the contract, simply because the policy favoring arbitration is implicated.

*See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002) (citations and internal

quotations omitted).

Movants argue in their motion that the claims asserted in the present suit fall within

the scope of the JVA's arbitration provision.  Plaintiffs disagree, arguing that they have

alleged only breaches of the APA, not the JVA; but they have not addressed the actual

scope of the provision or explained why the present suit is not at least related to the JVA,

particularly in light of their claim that movants breached fiduciary duties created by the

JVA.  The Court need not decide this issue, however, because it concludes that, in the

parlance of the Tenth Circuit and the Kansas courts, there was no meeting of the minds on

the question of mandatory arbitration, and that therefore there is no agreement to arbitrate

that may be enforced here.

This conclusion is compelled by the Tenth Circuit's decision in *Ragab v. Howard*,

841 F.3d 1134 (10th Cir. 2016).  In that case, the parties had entered into six agreements

that contained arbitration provisions that differed with respect to the rules that would

govern the arbitration.  *See id.* at 1136.  The district court concluded that the claims asserted

in the suit fell within the scope of all six arbitration provisions, but that there was no actual agreement to arbitrate because there had been no meeting of the minds with respect to how the claims would be arbitrated. *See id.* The Tenth Circuit affirmed that decision not to compel arbitration. *See id.* at 1137-39. The court first noted that Colorado law requires a meeting of the minds on essential contract terms. *See id.* at 1137. It then noted that although no Colorado court had addressed the issue of conflicting arbitration provisions, other courts had, including a New Jersey court that had ruled that "irreconcilable differences across multiple arbitration provisions indicate that the parties did not agree to arbitrate." *See id.* (citing *NAACP of Camden County East v. Foulke Mgmt. Corp.*, 24 A.3d 777, 794 (N.J. Super. Ct. App. Div. 2011)). The Tenth Circuit noted that courts had compelled arbitration despite conflicting provisions when the contracts themselves had provided the solution, as when a merger clause indicated that one contract's provision superseded the others. *See id.* at 1138. The *Ragab* court concluded, however, that in its case no language suggested that one contract overrode the others, and it could not "arbitrarily pick one to enforce because doing so could violate the other five." *See id.* The court therefore held that "the conflicting details in the arbitration provisions indicate[d] that there was no meeting of the minds with respect to arbitration" as required by Colorado law." *See id.³*

---

³ Judge Gorsuch dissented, stating that he believed that the parties had at least agreed to arbitrate the dispute, even if they did not agree on how the arbitration was to be conducted. *See Ragab*, 841 F.3d at 1139-41 (Gorsuch, J., dissenting). In so concluding, however, he distinguished that case from a case (such as the one in this Court) in which the parties' contract documents "conflict on the fundamental question whether they wish to arbitrate or not." *See id.* at 1141.

This Court concludes that the Tenth Circuit would reach the same result here, as the present case cannot be materially distinguished from *Ragab*. Kansas law (which applies pursuant to choice-of-law provisions in the JVA and the APA) also requires a meeting of the minds on all essential elements for a binding contract. *See Albers v. Nelson*, 248 Kan. 575, 580 (1991). Movants have not disputed that Kansas law is identical to Colorado law on that point; nor have they tried to distinguish *Ragab* on the basis of the state law being applied.[4] As in *Ragab*, multiple arbitration provisions are in conflict, as one provision here imposes mandatory binding arbitration and the other provision allows for arbitration only upon written consent by the parties. Each agreement contains a merger clause stating that the parties' entire agreement is set forth in both the APA and the JVA (and exhibits and attachments thereto), which were executed contemporaneously; thus, as in *Ragab*, there is no basis to favor one agreement's arbitration clause over the other's clause, and enforcing either clause would violate the other. Accordingly, under the holding of the Tenth Circuit in *Ragab*, there is no agreement to arbitrate here that may be enforced by the Court.[5]

Movants argue that *Ragab* does not govern because in this case the two provisions may be read in harmony and thus do not conflict.[6] Specifically, movants argue that the

---

[4] The parties did not cite, and the Court has not located, any case from a Kansas state court addressing the issue of conflicting arbitration provisions.

[5] The Court is able to decide this issue without holding the summary trial referenced in the FAA, 9 U.S.C. § 4; as in *Ragab*, there is no disputed issue of material fact, as the parties do not dispute that the two agreements are valid and that they contain the provisions discussed herein. *See Ragab*, 841 F.3d at 1139 (summary trial was not necessary in those circumstances).

[6] Movants first addressed this issue of conflicting provisions in their reply brief. The Court agrees with plaintiffs, however, that movants should have acknowledged the Continued…

JVA itself, with its mandatory arbitration provision, provides the written acceptance required by the APA for arbitration. The Court rejects this argument. The JVA and the APA were executed at the same time, and by their terms they effectively comprise a single agreement. Interpreting the JVA as urged by movants would in essence eliminate entirely the APA's requirement of written acceptance to a binding arbitration hearing. *See, e.g.*, *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998) (interpreting an agreement in such a way as to render a provision superfluous does not accord with general principles of contract law) (citing, *inter alia*, Restatement (Second) of Contracts § 203(a) (1979)). Moreover, the two arbitration provisions are not equal in scope (as each applies to disputes arising out of that particular agreement), which fact further contradicts any argument that the parties intended that the JVA provide the written acceptance required by the APA.

Movants also argue that any ambiguity created by the conflicting provisions should be resolved in favor of arbitration. The Tenth Circuit has foreclosed such an argument, however, holding that "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

Finally, movants argue that they should prevail under the rule of construction favoring a specific provision over a general one. The Court does not agree, however, that there is a general provision and a specific provision addressing the same issue in this case. Rather, the two provision are in direct conflict, as one imposes mandatory arbitration while

---

existence of the APA's competing arbitration provision in their initial brief, which would have allowed plaintiffs to respond to their arguments on the issue.

the other requires mutual consent before an arbitration is conducted.  As instructed by the Tenth Circuit in *Rabag*, the Court may not choose one conflicting provision if doing so would violate the other.

The Court thus concludes that plaintiffs and movants did not agree to mandatory arbitration of the claims asserted in this case.  Accordingly, the Court denies the motion to compel arbitration.


IT IS THEREFORE ORDERED BY THE COURT THAT certain defendants' motion to stay the case and to compel arbitration (Doc. # 17) is hereby **denied**.

IT IS SO ORDERED.

Dated this 4th day of November, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge
