## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAKE HAWLEY and MOTEGA HOLDINGS, INC. d/b/a MOTEGA HEALTH, | |
| *Plaintiffs,* | |
| vs. | Case No. 20-2562-EFM |
| JEFF SHEAR, AL KERSHMAN, AND SHEAR KERSHMAN LABORATORIES, INC., | |
| *Defendants.* | |

### MEMORANDUM AND ORDER

This lawsuit arises from a failed business relationship between Plaintiffs Blake Hawley and Motega Holdings, Inc. d/b/a Motega Health ("Motega") and Defendants Jeff Shear, Al Kershman, and Shear Kershman Laboratories, Inc. ("SK"). Plaintiffs assert a Lanham Act claim for false designation of origin and Kansas state law claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with prospective business advantage, unjust enrichment, and injunctive relief. Defendants now move for summary judgment on Plaintiffs' claims (Doc. 73). For the following reasons, the Court grants in part and denies in part Defendants' motion.

## I.    Factual and Procedural Background

Before reaching the uncontroverted facts, the Court addresses Plaintiffs' failure to comply with the local rule for summary judgment responses.  D. Kan. Rule 56.1(b)(2) provides that "[i]f the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above."[1]  Here, Plaintiffs do not set forth any facts in separately numbered paragraphs and supported by the record.  Instead, they simply refer to evidence they contend creates a genuine issue of material fact in the argument section of their brief.  The Court does not consider facts discussed by the parties only in the argument section of their briefs.[2]  Therefore, the following uncontroverted facts are those set forth by Defendants and viewed in the light most favorable to Plaintiffs, the nonmoving party.

### A.    The Parties' Business Relationship

Plaintiff Hawley has a background in developing and commercializing animal health care products.  Hawley met Defendants Shear and Kershman through a consultant in the pet industry.  Shear and Kershman are co-owners of Defendant SK, a business whose purpose is to invent or develop technologies used to create various products ranging from food to pharmaceuticals.

In 2018, Hawley created Motega in anticipation of purchasing the assets related to SK's business.   Hawley had no prior experience with SK's technologies before working with

---

[1] D. Kan. Rule 56.1(b)(2).

[2] *See Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.*, 2014 WL 2040158, at *2 n.4 (D. Kan. 2016) (citation omitted); *Jones v. Unified Gov't of Wyandotte Cnty./Kansas City*, 552 F. Supp. 2d 1261, 1261 n.1 (D. Kan. 2008).

Defendants.  He had never marketed womens' health products or performed revenue projections for human pharmaceutical projects.

On May 25, 2018, Motega entered into an Asset Purchase Agreement ("APA") with SK, Shear, and Kershman.  Hawley signed the APA as Chief Executive Officer on behalf of Motega. The APA required Motega to pay Defendants $1.2 million for a 90 percent ownership interest in certain SK assets (the "SK technologies"), and the remaining 10 percent ownership interest would be earned through gross revenue share.  Section 3.2 of the APA set an initial payment of $400,000. Section 3.3 sets forth a payment schedule for the remaining $800,000 of the total purchase price and the percentage of ownership Motega would acquire upon each payment.  Specifically, Motega was required to pay $200,000 on September 1, 2018, for a 41 percent ownership; $200,000 on November 1, 2018, for an additional 16 percent ownership, bringing Motega's total ownership to 57 percent ownership; $200,000 on February 1, 2019, for an additional 16 percent ownership, bringing Motega's total ownership to 73 percent ownership; and $200,000 on May 1, 2019, for an additional 17 percent ownership, bringing Motega's total ownership to 90 percent ownership. Section 3.3 also contains an interest provision stating that "interest shall accrue at a fixed rate of six percent (6.0%) per annum on any of the Payment Amounts which are outstanding and unpaid as of May 1, 2019."

Motega paid Defendants $400,000 on May 25, 2018, and $200,000 on October 4, 2018— which is $600,000 in total.  To date, Motega has not made any additional payments toward the $1.2 million purchase price.  Under section 3.3 of the APA, Motega owns 41 percent of the assets transferred pursuant to the APA.

Also on May 25, 2018, SK and Motega entered into a Joint Venture Agreement ("JVA"). The JVA states that SK and Motega "wish to jointly conduct a business, of which the primary

purpose is developing, researching and marketing the oral, vaginal, rectal mucosal technologies and other products . . . and shall conduct business under the name "MOTEGA HEALTH."  The JVA adopted and incorporated the APA into the agreement.  The JVA also provides that Hawley was CEO of the joint venture, and Shear, Kershman, and Hawley made up the three-person board.

**B.      The "Cleopatra Concept"**

Shortly after entering the APA and JVA, Plaintiffs began working with Melicent Boysen through her company, Initiatives Worldwide, LLC ("IW").  Plaintiffs hired Boysen for a variety of roles, including finding an investor in Motega, developing the financial model for licensing technologies, and performing business development.  Boysen also performed "sales modeling"—projecting revenues, expenses, and profits—for the SK technologies.  Hawley testified that he was able to provide Boysen the necessary data she needed to complete the "sales modeling" during the time Hawley and Boysen worked together.

In September or October 2019, Hawley and Boysen began collaborating on a project they called the "Cleopatra concept."  The Cleopatra concept was based on the SK technologies and additional technologies developed by Motega and Hawley.  The idea behind it was women's health products, primarily hormone and hygiene products that combat the challenges accompanying vaginal health, perimenopause, and menopause.  Hawley began discussing the Cleopatra concept with Shear and Kershman in November or December 2019.

In seeking investors for the Cleopatra concept, Hawley created a spreadsheet with various financial projections.  For one of these projections, Hawley sought an $8.4 million investment in exchange for a 25 percent ownership interest in Motega.  Hawley testified that any potential investment in the project included paying Defendants the $600,000 plus accruing interest that

Motega owed Defendants under the APA.  This is because the Cleopatra concept products included SK's technologies, which Motega did not fully own.

Hawley's financial projections in the spreadsheet were dependent on getting the Cleopatra concept to market.  The spreadsheet projected that the "Cleopatra concept" would generate $6.581 million in revenue during the first year of commercialization.  This is a steep increase from SK's annual revenue for the five years preceding the APA, which was approximately $800,000.

Neither Boysen nor Hawley was able to raise outside capital for Motega.  Plaintiffs never obtained a signed agreement or loan commitment letters from any potential investors.

C.      **This Litigation**

Plaintiffs filed this lawsuit in November 2020 against Defendants, Boysen, and Boysen's company, IW, alleging that Boysen attempted to claim the Cleopatra concept as her own and that Defendants aided Boysen in her efforts.  Plaintiffs further allege that Defendants licensed the SK technology, which is subject to the APA, to Boysen for the Cleopatra concept without Plaintiffs' knowledge or involvement.  According to Hawley, Boysen told him that there was a verbal license agreement between her and SK for the SK technologies.  However, Defendants have not entered into a written license agreement with Boysen or IW.  Nor has there been any money exchanged between Defendants and Boysen or her company.  Defendants also have never sold or marketed any products using the name "Cleopatra" or "Cleopatra Life" or any other "Cleopatra" name and have no future intention to do so.

As a result of the pending lawsuit, several investors had reservations about investing in Motega or the Cleopatra concept.  Hawley testified that two different companies and an individual did not move forward with any investment in Motega because of the pending lawsuit.  He also

testified that other potential investors backed away from investing because Hawley would not let allow them to speak with Shear or Kershman.

Plaintiffs dismissed their claims against Boysen and IW on December 22, 2021. Plaintiffs continue to assert claims against Defendants for breach of the APA,[3] breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with a prospective business advantage, unjust enrichment, and violation of § 1125(a) of the Lanham Act. Plaintiffs also assert a claim for injunctive relief against SK. Defendants now move for summary judgment on all of Plaintiffs' claims.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified

---

[3] Plaintiffs do not assert a claim for breach of the JVA in the Pretrial Order. However, they do rely on the JVA in their claim for damages for breach of contract and in their claim for breach of fiduciary duty.

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id*. (citing Fed. R. Civ. P. 56(e)).

through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

## III.    Analysis

### A.    Choice of Law

"A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including choice of law rules, of the forum state."[10] The parties assert that Plaintiffs' state law claims are governed by Kansas law, and the Court agrees.  When a contract incorporates a choice of law provision, Kansas courts apply the law chosen by the parties to control the agreement.[11]  Here, the APA contains a choice of law provision stating that the parties agreed to apply Kansas law.  Accordingly, Kansas law governs Plaintiffs' contract claim.  For tort claims, Kansas follows the *lex locti delicti* doctrine, which requires the Court to apply the law of the state where the tort occurred.[12]  Where the tort occurred is where the injury was suffered.[13]  Here, Plaintiffs allege that their resulting injury from Defendants' allegedly tortious conduct occurred in Kansas.  Thus, Kansas law also governs Plaintiffs' tort claims.

---

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *Mendy v. AAA Ins.*, 2017 WL 4422648, at *6 (D. Kan. 2017) (citing *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1104 (10th Cir. 1999)).

[11] *Brenner v. Oppenheimer & Co. Inc.*, 273 Kan. 525, 44 P.3d 364, 375 (2002).

[12] *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 735 (1985) (citations omitted).

[13] *Id.* (citation omitted).

A.      **Breach of Contract**

Defendants assert three arguments as to why they are entitled to summary judgment on Plaintiffs' breach of contract claim.  First, they argue that Plaintiffs materially breached the APA, and therefore Defendants were relieved of their obligations under it.  Second, they argue that Defendants did not commit the alleged breaches, and third, they argue that Plaintiffs' alleged damages are speculative.

1.      *Material Breach*

According to Defendants, Plaintiffs materially breached the APA by failing to pay the required $1.2 million in consideration for SK's technologies.  Defendants argue that it is undisputed that Plaintiffs only paid $600,000 of the total purchase price, and because this was a material breach of the APA, Defendants had no duty to fulfill their obligations under the contract.

 "A party is not liable for a material failure of performance if it can show that the other party committed a prior material breach of the contract; in such event, the prior breach discharged the party's own duty to perform."[14]  This rule "precludes a party who has first materially breached a contract from attempting to enforce that contract until the breach is cured and entitles the nonbreaching party to suspend or terminate performance under that contract as long as the breach remains uncured."[15]  A material breach is one in which "the promisee receives something substantially less or different from that for which he bargained."[16]

_____

[14] *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 1997 WL 51227, at *15 (D. Kan. 1997) (applying Kansas law) (citations omitted).

[15] *Bank of Am., N.A. v. Narula*, 46 Kan. App. 2d 142, 261 P.3d 898, Syl ¶ 3 (2011).

[16] *Almena State Bank v. Enfield*, 24 Kan. App. 2d 834, 954 P.2d 724, 727 (1998) (alteration and internal quotation omitted).

The rescission of a contract or the discharge of obligations does not arise from every prior breach . . . [S]uch breaches [must be] material and so substantial as to defeat the main purpose of those contracts . . ., such that the breaches might excuse all performance by plaintiffs under those contracts.[17]

Defendants assert that the primary objective of the parties' agreement was payment of $1.2 million in exchange for an interest in the SK technologies. They argue that this primary objective was thwarted when Motega only paid them $600,000 of the promised $1.2 million, and therefore Motega materially breached the agreement. However, the determination of whether a breach is material "is a question of fact."[18] Here, the APA contains a provision stating that six percent interest accrued on any unpaid amount beginning May 1, 2019. Furthermore, under the payment schedule, Motega acquired 41 percent of the assets upon its partial payment. These provisions suggest that the parties may have contemplated late payments or lack of payment in full when drafting the agreement. Given this evidence, the Court cannot conclude, beyond a reasonable doubt, that Motega's partial payment deprived Defendants of the main purpose of the APA. Therefore, the Court denies summary judgment on this basis.

### 2. Breach of the APA

Defendants next argue that they are entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs have no evidence of Defendants' alleged breaches. To prevail on a breach of contract claim under Kansas law, the plaintiff must show: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach

---

[17] *Deffenbaugh Indus., Inc. v. Unified Gov't of Wyandotte Cnty./Kansas City*, 2021 WL 6072508, at *24 (D. Kan. 2021) (quoting *Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, 2010 WL 3735757, at *6-7 (D. Kan. 2010)).

[18] *Almena State Bank*, 954 P.2d at 727 (citations and quotations omitted).

of the contract; and (5) damages to plaintiff caused by the breach."[19]  Here, Defendants' argument addresses the fourth element of a breach of contract claim.

Plaintiffs allege four breaches of the APA by Defendants.  The first breach is an alleged violation of section 6.1(a).  This section prohibits the disclosure of confidential information relevant to the SK technologies to another person, corporation, or entity without the prior written consent of the other party.  Plaintiffs allege that Defendants breached this section of the APA by disclosing to Boysen and IW confidential information and data relevant to the SK technologies without first obtaining Hawley's written consent.

Breaches two through four are alleged violations of section 6.1(d) of the APA.  That section prohibits Defendants from: (1) entering into or engaging, directly or indirectly, in any outside activities, consultations, or other employment using the technologies, know-how, procedures, or any intellectual property of the business; (2) soliciting customers, suppliers, or business patronage which results in competition with Motega; and/or (3) promoting and assisting, financially or otherwise, any person, firm, association, or other entity to engage in the business.  Plaintiffs contend Defendants breached this section of the APA by (1) licensing the Cleopatra concept to Boysen and IW at no cost, which resulted in Defendants competing with Motega; (2) providing Motega's intellectual property and technologies to Boysen and IW for free; and (3) refusing to provide Hawley with records and other information that could potentially be relevant to future tax returns and capital raises.[20]

---

[19] *Mid-Am Bldg. Supply, Inc., v. Schmidt Builders Supply, Inc.*, 2013 WL 1308980, at *3 (D. Kan. 2013) (quoting Pattern Instructions Kansas 4th 124.01-A; and then quoting *Comm. Credit Corp. v. Harris*, 212 Kan. 310, 510 P.2d 1322, 1325 (1973)).

[20] In their opposition brief, Plaintiffs also assert that Defendants breached the APA because they "undermined Plaintiffs and shopped said proprietary technology to potential investors."  Plaintiffs, however, did not include this as one of their four claimed breaches of contract in the Pretrial Order, and therefore the Court will not consider it in

As to the violation of section 6.1(a), Plaintiffs wholly fail to come forward with any evidence relating to when, where, or how Defendants provided confidential information to Boysen and IW without Hawley's consent.  Therefore, Plaintiffs do not meet their burden to come forward with admissible evidence from which a jury could find in their favor on this breach.

Plaintiffs do not fair any better as to the violations of section 6.1(d).  Plaintiffs produce no evidence relating to Defendants' alleged failure to provide Hawley with records and other information relevant to future tax returns and capital raises.  Furthermore, they do not explain, and the Court cannot discern, how this alleged conduct violates section 6.1(d).

As for the remaining two breaches of section 6.1(d)—Defendants' alleged licensing and giving away of the Cleopatra Concept and other technology for free—Plaintiffs argue there is a genuine issue of material fact as to whether Defendants engaged in this conduct.  Plaintiffs point to Hawley's deposition testimony in which he states that Boysen told him that Shear and Kershman licensed the Cleopatra concept through a verbal agreement.  This testimony, however, is inadmissible hearsay,[21] and a party opposing summary judgment cannot use inadmissible hearsay to support its opposition to summary judgment.[22]  "Hearsay testimony cannot be considered because a third party's description of a witness' supposed testimony is not suitable grist for the

---

response to Defendants' motion.  *See Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1220 (10th Cir. 2000) ("[A] pretrial order defines the scope of an action for trial.").

[21] Plaintiffs offer Boysen's out-of-court statement for the truth of the matter asserted—that Defendants licensed the Cleopatra concept and SK technologies to Boysen.  Thus, the statement is hearsay.  *See* Fed. R. Evid. 801(c) (" 'Hearsay; means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  Furthermore, the statement is inadmissible hearsay because it does not meet the exceptions of Fed. R. Evid. 803 and does not qualify as an opposing party's statement under Fed. R. Evid.  801(d)(2).

[22] *Jackson v. Amsted Rail Co., Inc*., 2014 WL 5025873, at *6 (D. Kan. 2014) (citing Fed. R. Civ. P. 56).

summary judgment mill."[23]  Because the Court cannot consider Hawley's statement, Plaintiffs fail to come forward with any evidence creating a genuine issue of material fact regarding whether Defendants licensed or gave away the Cleopatra concept or any other technology in violation of section 6.1(d) of the APA.  Therefore, the Court grants summary judgment on these breaches as well.

Overall, Plaintiffs do not come forward with any evidence creating a genuine issue of material fact as to the four alleged breaches of the APA.  The Court grants summary judgment to Defendants on Plaintiffs' breach of contract claim.  Because Defendants must only show a lack of evidence as to one essential element of Plaintiffs' claim to obtain summary judgment,[24] the Court will not address Defendants' argument that Plaintiffs' alleged damages are speculative.

## B.    Breach of the Duty of Good Faith and Fair Dealing

Defendants next seek summary judgment on Plaintiffs' claim for breach of the duty of good faith and fair dealing.  Plaintiffs allege that Defendants breached the duty of good faith and fair dealing by intentionally and in bad faith giving away the Cleopatra concept, giving away other licenses at no cost, and restricting Hawley's access to books, financials, employees, and day-to-day discussions and negotiations.  "Kansas law implies a duty of good faith in every contract."[25] To prevail on this claim, Plaintiffs must "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract

---

[23] *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (internal quotation marks and citations omitted).

[24] *Thom*, 353 F.3d at 851 (citations omitted).

[25] *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, 168 F. Supp. 3d 1334, 1345 (D. Kan. 2016) (citation omitted).

which the defendant allegedly violated by failing to abide by the good faith spirit of that term."[26]
"Breach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a
'legal argument related to a breach-of-contract claim.' "[27]

Here, Defendants argue that Plaintiffs' claim fails because Plaintiffs do not show that
Defendants breached the APA. Plaintiffs offer no argument in response, except to generally point
the Court to their argument discussing Plaintiffs' breach of contract claims. Plaintiffs thus fail to
come forward with any evidence creating a genuine issue of material fact as to whether Defendants
breached the contract or what term in the APA Defendants allegedly violated by failing to abide
by the good faith spirit of that term. Therefore, the Court grants summary judgment in Defendants'
favor.

## C.    Breach of Fiduciary Duty

Defendants next seek summary judgment on Plaintiffs' breach of fiduciary duty claim.
Plaintiffs claim that Defendants breached their fiduciary duty to Plaintiffs by (1) encumbering
assets subject to the APA without Plaintiffs' knowledge or consent; (2) impeding Plaintiffs from
pursuing business opportunities that would have benefitted the joint venture; (3) disclosing
confidential and proprietary information to third parties; (4) supporting a competitor of the joint
venture; (5) restricting access to SK employees; (6) unreasonably withholding permission to
engage with clients and customers that Hawley introduced; and (7) diminishing or eliminating the

---

[26] *Terra Venture, Inc. v. JDN Real Est. Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (quoting *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).

[27] *Steven Volkswagen, Inc. v. Zurich Am. Ins. Co.*, 2020 WL 2615764, at *7 (D. Kan. 2020) (quoting *Classico, LLC v. United Fire & Cas. Co.*, 386 P.3d 529, 2016 WL 7324451, at *5 (Kan. Ct. App. 2016)).

value of the assets over which Plaintiffs hold ownership interest.[28]  Defendants do not discuss any of these alleged breaches with particularity but generally assert that these breaches are subsumed by Plaintiffs' breach of contract claim.  In response, Plaintiffs rely on their alleged breaches in the Complaint instead of the Pretrial Order and argue that these breaches were independent of the parties' contracts.  Plaintiffs also argue that a fiduciary relationship exists between the parties because they are joint venturers.

The parties' arguments raise two issues.  First, was there an existing fiduciary relationship between the parties?  And second, if a fiduciary relationship did exist, were any of the fiduciary duties owed to Plaintiffs by Defendants negated by the parties' contracts?

"Kansas recognizes two types of fiduciary relationships: (1) those specifically created by contract . . . and (2) those implied in law due to facts surrounding the involved transactions and the parties' relationships."[29]  "Under Kansas law, all joint venture members owe their co-venturers the 'same fiduciary duty to each other as do partners.' "[30]  Even if the joint venture is created under contract, "co-venturers owe each other fiduciary duties unless the contract expressly negates these duties."[31]  Here, Motega and SK entered into the JVA, which explicitly states that the parties

---

[28] The Court has set forth the alleged breaches as they are listed in the Pretrial Order because the Pretrial Order controls Plaintiffs' claim in the case.  *See Koch*, 203 F.3d at 1220.  The breaches set forth in the Complaint are worded slightly differently, and some are not not set forth in the Pretrial Order.  Because the Pretrial Order governs the case, any claims in the Complaint but not the Pretrial Order are not relevant.

[29] *Cargill Meat Solns. Corp.*, 168 F. Supp. 3d at 1339 (citing *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052–53 (D. Kan. 1990)).

[30] *Pipeline Prods., Inc. v. Horsepower Ent*., 2017 WL 4536420, at *3 (D. Kan. 2017) (quoting *Goben v. Barry*, 234 Kan. 721, 676 P.2d 90, 97 (1984)).

[31] *Id*. (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc*., 226 Kan. 70, 596 P.2d 816, 823 (1979)).

-14-

agreed to conduct their business as a joint venture. Thus, by virtue of the JVA, a fiduciary relationship existed between Motega and SK.[32]

Turning to the second question, under Kansas law, "tort claims such as breach of fiduciary duty can be pleaded in parallel with breach-of-contract claims only if the tort is independent of the bargained for duties in the contract."[33]  Defendants generally assert that all of Plaintiffs' claimed breaches of fiduciary duty arise from the APA and JVA and thus are not independent from the contracts.  Defendants, however, do not address the claimed breaches with any particularity.  They fail to show the Court where each individual breach is negated by the APA or JVA, and therefore do not meet their burden on summary judgment to show that they are entitled to judgment as a matter of law.  The Court recognizes that one of Plaintiffs' alleged breaches of fiduciary duty is identical to one of Plaintiffs' alleged breaches of the APA: disclosing confidential and proprietary information to third parties.  Because Plaintiffs assert that Defendants breached the APA as a result of this alleged conduct, it cannot serve as a basis for Plaintiffs' breach of fiduciary duty claim.

Overall, the Court grants in part and denies in part summary judgment on this claim.  The Court grants summary judgment on Plaintiffs' claim that Defendants breached their fiduciary duty by disclosing propriety information to third parties because this claim is identical to one of Plaintiffs' breach of contract claims.  The Court denies summary judgment with respect to Plaintiffs' remaining claims for breach of fiduciary duty.

---

[32] Defendants argue that there is no fiduciary relationship between the parties, relying on *Swimwear Solutions, Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022 (D. Kan. 2018).  But, Defendants' reliance on that case is misplaced.  In *Swimwear Solutions*, the Court determined whether there was a fiduciary duty implied at law, not whether a fiduciary duty was created by contract. *Id*. at 1033.

[33] *Id*. at 1032.

**D.      Tortious Interference with Prospective Business Advantage**

Defendants contend that Plaintiffs cannot establish the elements of their tortious interference with prospective business advantage claim.  To prevail on this claim, a plaintiff must demonstrate:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of defendant, the plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[34]

The plaintiff also must prove malicious conduct by the defendant.[35]  Malice is defined as acting "with actual evil-mindedness or specific intent to injure."[36]

As to the first element, Defendants argue that Plaintiffs cannot prove the existence of a business relationship or expectancy with reasonable certainty to realize a future economic benefit. Kansas law requires Plaintiffs to demonstrate they were "reasonably certain [they] would realize a future economic benefit."[37]  Plaintiffs cite Hawley's deposition testimony stating that investors committed to investing in Motega and the Cleopatra concept as evidence of a reasonably certain economic benefit.  But, as discussed above, the Court will not consider this evidence because it was only included in the argument section of Plaintiffs' brief and not set forth in an additional statement of facts required by D. Kan. Rule 56.1.  Furthermore, even if the Court concluded that

---

[34] *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986) (citation omitted).

[35] *Id.*

[36] *Id.* at 1113 (quoting *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063, 1073 (1972).

[37] *Triple-I Corp. v. Hudson Assoc. Consulting*, 713 F. Supp. 2d 1267, 1286 (D. Kan. 2010) (quoting *Macke Laundry Serv. Ltd. v. Mission Assocs., Ltd*., 19 Kan. App. 2d 553, 873 P.2d 219, 225 (1994)).

this evidence created a genuine issue of material fact as to the first element of Plaintiffs' claim, Plaintiffs fail to come forward with evidence of the fourth element of the claim.

The fourth element requires intentional misconduct by the defendant.[38]  A plaintiff must show "that the defendant acted with malice, or actual evil-mindedness or specific intent to injure."[39]  Plaintiffs do not direct the Court to any evidence indicating intentional misconduct or malice by Defendants.  Rather, it is undisputed that Hawley testified that the investors backed away because of his own conduct of filing a lawsuit and not allowing investors to meet with Defendants.

Because there are no genuine issues of material fact as to the first and fourth elements of Plaintiffs' tortious interference claim, Plaintiffs' claim fails.  The Court grants Defendants summary judgment as to this claim.

## E.   Unjust Enrichment

Defendants seek summary judgment on Plaintiff's claim for unjust enrichment on the basis that a specific contract governs the parties' relationship and thus bars the claim.  Plaintiffs offer little response to Defendants' argument.  Instead, they generally refer the Court to those sections of their opposition discussing their breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing claims, they and assert that there is genuine issue of material fact that precludes summary judgment as to this claim.

"Unjust enrichment falls under the category of quantum meruit and restitution, and these 'are not available theories of recovery when a valid, written contract addressing the issue

---

[38] *Id*. at 1287 (citation omitted).

[39] *Id*.

exists.' "[40]  Here, Plaintiffs do not dispute that the parties entered into a valid written contract—the APA—or that the APA governs the parties' conduct in this case.  Therefore, Plaintiffs' unjust enrichment claim fails as a matter of law.  The Court grants Defendants summary judgment on this claim.

### F.    Lanham Act Claim

Plaintiffs allege that Defendants violated § 1125 of the Lanham Act by improperly attempting to market products under the "Cleopatra" name without having the rights to such name or products.  Plaintiffs argue that they held the rights to the "Cleopatra" name and products, which they allege were created using the SK technologies.  Defendants argue they are entitled to summary judgment on this claim because Plaintiffs cannot prove a violation of the Lanham Act.

Section 1125(a) of the Lanham Act prohibits a person from using in commerce "any word, term, symbol, or device, or any combination thereof, or any false designation of origin" that "is likely to cause confusion . . . as to the affiliation of such person with another person, or as to the origin . . . of his or her goods, services, or commercial activities by another person."[41]  This section gives rise to several causes of action, including trademark infringement of an unregistered mark, unfair competition, and false designation of origin.[42]  Here, Plaintiffs have entitled their Lanham Act claim as a "false designation" claim in the Pretrial Order.  Neither party, however, treats the claim as one of false designation of origin.  Defendants treat the claim as one of infringement of

---

[40] *Freedom Transp. Inc. v. Navistar Int'l Corp.*, 2019 WL 4689604, at *25 (D. Kan. 2019) (quoting *Ice Corp. v. Hamilton Sunstrand*, 444 F.2d 1165, 1171 (D. Kan. 2006)).

[41] 15 U.S.C. § 1125(a)(1)(A).

[42] *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring in result) (noting that the statute authorizes false designation of origin and unfair competition claims); *see also Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008) (recognizing both trademark infringement and unfair competition claims under § 1125 of the Lanham Act).

an unregistered mark.  Plaintiffs treat the claim as one of infringement of an unregistered mark or one of unfair competition.

For purposes of this Order, it is irrelevant whether Plaintiffs bring a false designation of origin claim, a trademark infringement claim, or an unfair competition claim because all three claims under § 1125(a) of the Lanham Act share common elements.  To prevail on a claim for trademark infringement and unfair competition, a plaintiff must show:  "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers."[43]  To prevail on a claim for false designation of origin, a plaintiff must show:  (1) that the defendant used a symbol falsely describing an object; (2) the defendant caused the object to enter into commerce; (3) the plaintiff was damaged by the use of the false description; and (4) the description or representation is likely to cause confusion.[44]  Each of these three claims require a plaintiff to show (1) that the defendant caused the mark or the falsely described object to enter into commerce, and (2) the defendant's conduct is likely to confuse consumers.

Defendants argue that Plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact as to either of these elements, and the Court agrees.  As to whether

---

[43] *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal quotation marks and citation omitted); *see also Utah Lighthouse*, 527 F.3d at 1050 (10th Cir. 2008) (stating that trademark infringement claims and unfair competition claims under § 1125(a) have virtually identical elements).

Plaintiffs propose a different test for trademark infringement and unfair competition under § 1125(a).  Under Plaintiffs' test, a plaintiff must show (1) ownership of a valid, protectable service mark and (2) the defendants' service is so similar to the plaintiff that it is likely to cause consumer confusion.  Plaintiffs cite a 1998 case from this District—*Primedia Intertec Corp. v. Tech. Mktg. Corp.*, 35 F. Supp. 2d 809 (D. Kan. 1998)—in support of their argument.  The Court declines to follow this test because the Tenth Circuit set forth the test for infringement and unfair competition in the more recent cases of *Utah Lighthouse Ministry* and *1-800 Contacts*.

[44] *See Polo Fashions, Inc. v. Diebolt, Inc.*, 634 F. Supp. 786, 789-90 (D. Kan. 1986) (citations omitted).

Defendants caused the "Cleopatra" mark or a falsely described object to enter into commerce, it is undisputed that Defendant never sold or marketed any product using the name "Cleopatra." The only evidence Plaintiffs rely on for this element is Hawley's testimony that Boysen told him that SK licensed the Cleopatra mark and technology to Boysen. As addressed above, this testimony is inadmissible hearsay and cannot be used to oppose a motion for summary judgment. Therefore, Plaintiffs fail to create a genuine issue of material fact as to this element of their Lanham Act claim.

Plaintiffs also do not come forward with evidence showing a genuine issue of material fact as to whether Defendants' conduct is likely to confuse consumers. Likelihood of confusion is typically determined using a six-factor test in which a court considers:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength and weakness of the marks.[45]

The party alleging infringement has the burden to prove likelihood of confusion.[46] Although it is usually a question of fact, it is amenable to summary judgment in appropriate cases.[47]

This is an appropriate case. As Defendants assert, it is undisputed there is no evidence of actual confusion. Furthermore, Plaintiffs wholly fail to address whether there is a likelihood of confusion in their opposition brief. Plaintiffs therefore have not met their burden on summary judgment with respect to this element.

---

[45] *Utah Lighthouse Ministry*, 527 F.3d at 1055 (*quoting Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964 (10th Cir. 2002)).

[46] *Id.* (citing *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238-39 (10th Cir. 2006)).

[47] *Id.* (citation omitted).

-20-

Because Plaintiffs do not demonstrate there is a genuine issue of material fact as to whether Defendants used the Cleopatra name and technology in commerce and whether such use creates a likelihood of confusion, the Court grants summary judgment to Defendants on Plaintiffs' Lanham Act claim.

## G.      Injunctive Relief

Defendants next assert that they are entitled to summary judgment on Plaintiffs' claim for injunctive relief.  Defendants' argument focuses on Plaintiffs' request for relief in their Complaint. That request asks the Court to "enjoin the SK Defendants from permitting the IW Defendants [Boysen and IW]" to "proceed with the Cleopatra Concept, claim[] the Cleopatra Concept and all associated work product and intellectual property as their own, and/or marketing, selling or distributing misappropriated work product."  Plaintiffs, however, no longer seek this exact relief. In the Pretrial Order, Plaintiffs state that they "seek to enjoin Defendants from licensing assets or technologies subject to the APA without Plaintiffs' consent."  Neither side addresses the specifics of this injunctive relief in their summary judgment briefing.  The Pretrial Order, and not Plaintiffs' Complaint, controls the course of the action at this point in the litigation.[48]  Because Defendants fail to address the request for injunctive relief set forth in the Pretrial Order, they do not meet their burden to show that summary judgment is warranted as to this claim.

## H.      Plaintiff Hawley's Claims

Defendants argue that Plaintiff Hawley is not entitled to individual relief because he was not a party to the APA or JVA.  In response, Plaintiffs argue that Hawley has standing to assert

---

[48] *See Koch*, 203 F.3d at 1220 ("[A] pretrial order defines the scope of an action for trial. . . ."); *Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269, 1278 (D. Kan. 2007) ("The pretrial order is the controlling document for trial. . . .  Claims not included in the pretrial order are waived.").

claims because he is the CEO and President of Motega.  Plaintiffs' argument is not persuasive as Plaintiffs do not cite any authority stating that a CEO and President of a corporation has standing to assert claims as a result of his or her position within the company.  Furthermore, the only remaining claims in this case are Plaintiffs' claims for breach of fiduciary duty and injunctive relief.  Plaintiffs assert that Defendants owe them a fiduciary duty based on their status as co-venturers under the JVA.  But, only Motega and SK are parties to the JVA, not Hawley.  Thus, if a fiduciary relationship exists, it is between SK and Motega.  Hawley therefore cannot recover damages or obtain injunctive relief for breach of fiduciary duty.  The Court grants summary judgment against Plaintiff Hawley in his individual capacity on these remaining claims.

## IV.    Conclusion

The Court grants summary judgment in Defendants' favor as to Plaintiffs' breach of contract, breach of the duty of good faith and fair dealing, tortious interference with prospective business advantage, unjust enrichment, and Lanham Act claims.  The Court grants in part and denies in part summary judgment as to Plaintiffs' breach of fiduciary duty claim.  The Court denies summary judgment as to Plaintiffs' claim for injunctive relief.  In addition, Plaintiff Hawley is not entitled to individual relief on Plaintiffs' remaining claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 73) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 5th day of April, 2023.

*Eric F. Melgren*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE